UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY (CAMDEN)

Caption in Compliance with D.N.J. LBR 9004-1(b)
2017-2058

**Pincus Law Group, PLLC**
nlabletta@pincuslaw.com
Nicole LaBletta, Esquire
2929 Arch Street
Suite 1700
Philadelphia, PA 19104
(484) 575-2201
ATTORNEYS FOR WILMINGTON SAVINGS
FUND SOCIETY, FSB, ACTING NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS
TRUSTEE OF SOUTHSIDE NSP TRUST 2017-1
C/O BSI FINANCIAL SERVICES

| | |
|---|---|
| In Re:<br><br>CHRISTOPHER J. GALLOWAY AND BETH GALLOWAY<br><br>                    DEBTOR AND NON-FILING CO-DEBTOR | Case No.: 19-27226 JNP<br><br>Chapter 13<br><br>Hearing Date: 05/06/2020<br><br>Judge: Honorable Jerrold N. Poslusny Jr. |

## NOTICE OF MOTION FOR ORDER
## VACATING AUTOMATIC STAY AS TO REAL PROPERTY

Attorneys for WILMINGTON SAVINGS FUND SOCIETY, FSB, ACTING NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF SOUTHSIDE NSP TRUST 2017-1 C/O BSI FINANCIAL SERVICES ("Movant") hereby moves this Court for relief from the automatic stay and Co-Debtor Stay pursuant to 11 U.S.C. Section 362(d) and 11 U.S.C. Section 1301, with respect to certain real property of the Debtor and non-filing Co-Debtor having an address of **7759 Corbett Avenue, Pennsauken, NJ 08109** (the "Property").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to vacate the automatic stay as it relates to the property

commonly known as **7759 Corbett Avenue, Pennsauken, NJ 08109,** currently owned by the

Debtor and non-filing Co-Debtor and made part of this bankruptcy, or if you want the court to

consider your views on the motion, then on or before **April 15, 2020**, you or your attorney must:

1. File with the court a written request for a hearing, and an answer explaining your
   position at:  Clarkson S. Fisher US Courthouse, 401 Market Street, Camden, NJ 08101.
   If you mail your response to the court for filing, you must mail it early enough so the
   court will receive it on or before the date stated above.  You must also mail a copy to
   the following:

| | |
|---|---|
| PINCUS LAW GROUP, PLLC | Isabel C. Balboa |
| 2929 ARCH STREET | Standing Chapter 13 Trustee |
| SUITE 1700 | 535 Route 38- Suite 580 |
| PHILADELPHIA, PA 19104 | Cherry Hill, NJ 08002 |
| 484-575-2201 | |
| ATTORNEYS FOR MOVANT, | |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, ACTING NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF SOUTHSIDE NSP TRUST 2017-1 C/O BSI FINANCIAL SERVICES | |

2. Attend the hearing scheduled for, **May 6, 2020**, at **__10:00 AM** in Courtroom **#4C** of
   the
U.S. BANKRUPTCY COURT, 401 Market Street, Camden, NJ 08101.

If you or your attorney do not take these steps, the court may decide that you do not oppose

the relief sought in the motion or objection, and may enter an order granting that relief.

The facts and circumstances supporting this Motion are set forth in the Certification

Regarding Post Petition Payment History filed contemporaneously herewith (the "Certification").

Movant seeks relief from the automatic stay for the following reasons:

**Motion for Relief from Stay**

Post-confirmation payments required by the confirmed plan have not been made to Movant.

Movant requests the following relief:

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. For such other relief as the Court deems proper.

**Statement of Non-Necessity of Brief:** The Movant certifies pursuant to D.N.J. LBR 9013-2 that the within motion involves common questions of law and fact and does not involve complex or novel issues such as to require the submission of a legal brief.

Respectfully submitted,

Dated: 03/31/2020

**PINCUS LAW GROUP, PLLC**

By:    /s/ Nicole LaBletta
       Nicole LaBletta, Esquire
       2929 Arch Street
       Suite 1700
       Philadelphia, PA 19104
       Telephone: 484-575-2201
       Fax: 516-279-6990
       Email: nlabletta@pincuslaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY (CAMDEN)

Caption in Compliance with D.N.J. LBR 9004-1(b)
2017-2058

**Pincus Law Group, PLLC**
nlabletta@pincuslaw.com
Nicole LaBletta, Esquire
2929 Arch Street
Suite 1700
Philadelphia, PA 19104
(484) 575-2201
ATTORNEYS FOR WILMINGTON SAVINGS
FUND SOCIETY, FSB, ACTING NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS
TRUSTEE OF SOUTHSIDE NSP TRUST 2017-1
C/O BSI FINANCIAL SERVICES

In Re:

CHRISTOPHER J. GALLOWAY AND BETH
GALLOWAY

              DEBTOR AND NON-FILING CO-
DEBTOR

Case No.: 19-27226 JNP

Chapter 13

Hearing Date: 05/06/2020

Judge: Honorable Jerrold N. Poslusny

Jr.

## <u>ORDER VACATING STAY</u>

The relief set forth on the following page is hereby **ORDERED**.

(Page 2)

Debtor and Non-Filing Co-Debtor: CHRISTOPHER J. GALLOWAY AND BETH GALLOWAY

Case No.        19-272226 JNP

Caption of Order:        ORDER VACATING AUTOMATIC STAY

_____

Upon the motion of Pincus Law Group, PLLC, attorneys for WILMINGTON SAVINGS FUND SOCIETY, FSB, ACTING NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF SOUTHSIDE NSP TRUST 2017-1 C/O BSI FINANCIAL SERVICES under Bankruptcy Code section 362(a) and Bankruptcy Code section 1301 for relief from the automatic stay as to certain property as hereinafter set forth, and for cause shown, it is

ORDERED that the automatic stay is vacated to permit the Movant to institute or resume and prosecute to conclusion one or more actions in the court(s) of appropriate jurisdiction to pursue the Movant's rights in the following:

Real Property more fully described as:
**7759 Corbett Avenue, Pennsauken, NJ 08109**

It is further ORDERED that the Movant may join the Debtor, Non-filing Co-Debtor, and any trustee appointed in this case as defendants in its action(s) irrespective of any conversion to any other chapter of the Bankruptcy Code.

The Movant shall serve this order on the Debtor, Non-filing Co-Debtor, any trustee and any other party who entered an appearance on the Motion.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Pincus Law Group, PLLC
nlabletta@pincuslaw.com
Nicole LaBletta, Esquire
2929 Arch Street
Suite 1700
Philadelphia, PA 19104
(484) 575-2201
ATTORNEYS FOR WILMINGTON SAVINGS FUND
SOCIETY, FSB, ACTING NOT IN ITS INDIVIDUAL
CAPACITY BUT SOLELY AS TRUSTEE OF SOUTHSIDE NSP
TRUST 2017-1 C/O BSI FINANCIAL SERVICES

| | |
|---|---|
| In Re: | Case No.: ___19-27226___ |
| CHRISTOPHER J. GALLOWAY AND BETH GALLOWAY | Chapter: ___13___ |
| DEBTOR AND NON-FILING CO-DEBTOR | Hearing Date: ___TBD___ |
| | Judge: ___JNP___ |

### CERTIFICATION OF CREDITOR REGARDING POST PETITION PAYMENT HISTORY
( NOTE AND MORTGAGE DATED _____02/15/2008_____ )

_Raymond Valderrama Jr_, employed as _Asst Vice President_ by
_BSI Financialservices_, hereby certifies the following:

Recorded on ___03/07/2008___, in ___Camden___ County, in Book ___08781___ at Page ___1360___

Property Address: ___7759 Corbett Avenue, Pennsauken, NJ 08109___

Mortgage Holder: ___WILMINGTON SAVINGS FUND SOCIETY, FSB,ACTING NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF SOUTHSIDE NSP TRUST 2017-1___

Mortgagor(s)/ Debtor(s): ___CHRISTOPHER J. GALLOWAY AND BETH GALLOWAY___

POST-PETITION PAYMENTS (Petition filed on _____09/06/2019_____)

| | Amount Due | Date Payment Was Due | How Payment Was Applied (Mo./Yr.) | Amount Received | Date Payment Received | Check or Money Order Number |
|---|---|---|---|---|---|---|
| 1. | $ 1,077.95 | 10/01/2019 | n/a | $ 0.00 | n/a | n/a |
| 2. | $ 1,077.95 | 11/01/2019 | n/a | $ 0.00 | n/a | n/a |
| 3. | $ 1,077.95 | 12/01/2019 | n/a | $ 0.00 | n/a | n/a |

| Amount Due | Date Payment Was Due | How Payment Was Applied (Mo/Yr) | Amount Received | Date Payment Received | Check or Money Order Number |
|---|---|---|---|---|---|
| 4. $ 1,077.95 | 01/01/2020 | n/a | $ 0.00 | n/a | n/a |
| 5. $ 1,077.95 | 02/01/2020 | n/a | $ 0.00 | n/a | n/a |
| 6. $ 1,077.95 | 03/01/2020 | n/a | $ 0.00 | n/a | n/a |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| TOTAL: $ 6,467.70 | | | $    0.00 | | |

[Continue on attached sheets if necessary.]

Monthly payments past due: _____ 6 _____ mos. x $ _1,033.39_____        UPB as of 02/29/20
(Monthly payment + late charge) = $ _0.00_____ as of ____02/29/2020____        $144,184.02

Each current monthly payment is comprised of:

| | | | |
|---|---|---|---|
| Principal | $ | 509.35 | P&I |
| Interest | $ | | |
| R.E. Taxes: | $ | | |
| Insurance: | $ | | |
| Late Charge: | $ | | |
| Other: | $ | 639.53 | (Specify:_____Escrow_____) |
| TOTAL | $ | 1,148.88 | |

Attorney fees and costs for the preparation and filing of this Motion will not exceed $1,231.00.

If the monthly payment has changed during the pendency of the case, please explain (attach separate sheet(s) if necessary): _____

_____

Pre-petition arrears: _____ to _____ ( _____mos. x $ _____/mo. = $ ___0.00___ )

I certify under penalty of perjury that the above is true.

Date: _03/31/2020_____

Signature

rev.8/1/15

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Pincus Law Group, PLLC
nlabletta@pincuslaw.com
Nicole LaBletta, Esquire
2929 Arch Street
Suite 1700
Philadelphia, PA 19104
(484) 575-2201
ATTORNEYS FOR WILMINGTON SAVINGS FUND SOCIETY, FSB,
ACTING NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS
TRUSTEE OF SOUTHSIDE NSP TRUST 2017-1 C/O BSI FINANCIAL
SERVICES

In Re:

CHRISTOPHER J. GALLOWAY AND BETH
GALLOWAY

DEBTOR AND NON-FILING CO-DEBTOR

| | |
|---|---|
| Case No.: | 19-27226 |
| Chapter: | 13 |
| Adv. No.: | n/a |
| Hearing Date: | 05/06/2020 |
| Judge: | JNP |

## CERTIFICATION OF SERVICE

1.  I, _____ Nicole LaBletta _____ :

    ☒ represent _____ Movant _____ in this matter.

    ☐ am the secretary/paralegal for _____, who represents

    _____ in this matter.

    ☐ am the _____ in this case and am representing myself.

2.  On _____ March 31, 2020 _____, I sent a copy of the following pleadings and/or documents
    to the parties listed in the chart below.

    Motion for Relief from Stay

3.  I certify under penalty of perjury that the above documents were sent using the mode of service
    indicated.

Date: _____ 03/31/2020 _____          /s/ Nicole LaBletta _____

                                      Signature

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Christopher J. Galloway<br>Beth Galloway<br>7759 Corbett Ave.<br>Pennsauken, NJ 08109 | Debtor/Non-filing Co-Debtor | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| Daniel L Reinganum<br>McDowell Law, PC<br>46 West Main Street<br>Maple Shade, NJ 08052 | Debtor's Attorney | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| Isabel C. Balboa<br>Chapter 13 Standing Trustee<br>Cherry Tree Corporate Center<br>535 Route 38 - Suite 580<br>Cherry Hill, NJ 08002 | Trustee | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| U.S. Trustee<br>US Dept of Justice<br>Office of the US Trustee<br>One Newark Center Ste 2100<br>Newark, NJ 07102 | U.S. Trustee | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
|  |  | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |

*rev.8/1/16*

**NOTE**

GALLOWAY

---

February 15, 2008                    SOMERSET                    New Jersey
[Date]                               [City]                       [State]

7759 CORBETT AVENUE, PENNSAUKEN, NJ 08109
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means SECURITY ATLANTIC MORTGAGE CO. INC. and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of Two Hundred Two Thousand Two Hundred Eighty Four Dollars (U.S. $202,284.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six And One-Fourth percent (6.250%) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on April 1, 2008. Any principal and interest remaining on the first day of March, 2038, will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at 619 AMBOY AVENUE, EDISON, NJ 08837 or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $1,245.50. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge          ☐ Growing Equity Allonge          ☐ Other [Specify] _____

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

---

36.4                              Page 1 of 3                    FHA Multistate Fixed Rate Note -- 12/01

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent (4.000%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____    2/15/08
- BORROWER -    CHRISTOPHER J. GALLOWAY    - DATE -

_____    2/15/08
- BORROWER -    BETH GALLOWAY    - DATE -

*[Sign Original Only]*

WITHOUT RECOURSE, PAY TO THE ORDER OF:

Countrywide Bank, FSB

SECURITY ATLANTIC MORTGAGE CO. INC.

_____
JOHANNA ~~~~~~~~~~
~~~~~~~~ SECRETARY

---

36.4    Page 3 of 3    FHA Multistate Fixed Rate Note -- 12/01

CAMDEN COUNTY, NJ
JAMES BEACH, COUNTY CLERK
MTG-OR BOOK 08781 PG 1360
RECORDED 03/07/2008 14:18:33
FILE NUMBER 2008018757
RCPT#: 621904; RECD BY: audreyk
RECORDING FEES 110.00
MARGINAL NOTATION 0.00

After Recording Return To:
SECURITY ATLANTIC MORTGAGE
CO. INC.
619 AMBOY AVENUE
EDISON, NJ 08837
ATTN: NADIRA PERSAUD
(732) 738-7100

Prepared By:
Edna Perez
SECURITY ATLANTIC MORTGAGE
CO. INC.
619 AMBOY AVENUE
EDISON, NJ 08837
(732) 738-7100

---

[Space Above This Line For Recording Data]

## MORTGAGE



    THIS MORTGAGE ("Security Instrument") is given on **February 15, 2008**. The mortgagor is **CHRISTOPHER J. GALLOWAY** and **BETH GALLOWAY, HUSBAND AND WIFE** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has a mailing address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, telephone (888) 679-MERS. **SECURITY ATLANTIC MORTGAGE CO. INC.,** ("Lender") is organized and existing under the laws of **NEW JERSEY**, and has a principal office and mailing address of **619 AMBOY AVENUE, EDISON, NJ 08837**. Borrower owes Lender the principal sum of Two Hundred Two Thousand Two Hundred **Eighty-Four And 00/100** Dollars (U.S. **$202,284.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **March 1, 2038**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch.353, Section 1 *et seq.,* and upon such modification, shall have the benefit of the lien priority provisions of that law.

393.25                                      Page 1 of 8                                FHA New Jersey Mortgage

The maximum principal amount secured by this Security Instrument is $202,284.00. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in CAMDEN County, New Jersey:

SEE ATTACHED SCHEDULE A

BLOCK 2802 LOT 16

which has the address of 7759 CORBETT AVENUE, PENNSAUKEN, New Jersey 08109 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest, and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow amount under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund

any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection or the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the

indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 3. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

> (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
>
> (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

> (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
>
> (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof. Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the

law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to lender or lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument. Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment application of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorney's fees and costs of title evidence permitted by Rules of Court.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751**

*et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

   **19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

   **20. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

   **21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider                    ☐ Growing Equity Rider                 ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider        ☐ Graduated Payment Rider
☐ Other(s) [specify]

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_____    2/15/08
- BORROWER - CHRISTOPHER J.  GALLOWAY  -  DATE -

_____    2/15/08
- BORROWER - BETH  GALLOWAY  -  DATE -

**STATE OF** New Jersey

**COUNTY OF** CAMDEN

On this **15th** day of **February, 2008**, before me, the subscriber, personally appeared **CHRISTOPHER J. GALLOWAY** and **BETH GALLOWAY, HUSBAND AND WIFE,** who, I am satisfied are the persons named in and who executed the within instrument, and thereupon acknowledged that they signed, sealed and delivered the same as their act and deed, for the purposes therein expressed.

_Marnee S Cinelli_
Notary Public

My Commission Expires: 11-15-2010

MARNEE S CINELLI
Notary Public
State of New Jersey
My Commission Expires Nov 15, 2010

## TICOR TITLE INSURANCE COMPANY

**File Number:** 

## S C H E D U L E   C
## LEGAL DESCRIPTION

**All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the** Township of Pennsauken, County of Camden State of New Jersey:

BEGINNING at a point in the curved Northeasterly line of Corbett Avenue, an arc distance of 25.02 feet, with a radius of 100.00 feet, Northwestwardly from a point of tangency in the Northerly line thereof, said point of tangency being distant 78.51 feet Westerly from the intersection of the said Northerly line of Corbett Avenue with the Westerly end of the rounded Northwesterly corner of Corbett Avenue and Burning Tree Road, said rounded corner having a radius of 10.00 feet said beginning point being the division line between Lots 103 and 104, on Plan hereinafter mentioned, and extending; thence

1.      Northwestwardly, along a the Northeasterly line of Corbett Avenue curving to the Right with a radius of 100.00 feet an arc distance of 53.52 feet to a point of reverse curve therein; thence

2.      Northwestwardly still along the Northeasterly line of Corbett Avenue curving to the left with a radius of 160.00 feet, an arc distance of 19.52 feet to the division line between Lots 104 and 105, said Plan; thence

3.      North 23 degrees 44 minutes 31 seconds East, along said division line, 119.90 to line of Lot 102, said Plan; thence

4.      South 33 degrees 32 minutes 19 seconds East, along the said division line between Lots 102, and 104, 83.11 feet to a corner common to Lots 102, 103 and 104, said Plan; thence

5.      South 24 degrees 51 minutes 30 seconds West along the said division line Lots 103 and 104 as aforementioned 98.78 feet to the curved Northeasterly line of Corbett Avenue and place of BEGINNING.

**NOTE: Being Lot(s)** 16, **Block** 2802, Tax Map of the Township of Pennsauken, **County of** Camden.

**NOTE: Lot and Block shown for informational purposes only.**

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Jennifer McGovern
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

_____ *[Space Above This Line For Recording Data]* _____

## HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I")[1]:          CHRISTOPHER J GALLOWAY and BETH  GALLOWAY

Lender or Servicer ("Lender"): Bayview Loan Servicing, LLC

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):  02/15/2008

Loan Number: ██████████

Property Address ("Property"):7759 CORBETT AVENUE PENNSAUKEN, NJ  08109

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    My Representations and Covenants. I certify, represent to Lender, covenant and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT  -  Single Family  -  Fannie Mae / Freddie Mac  UNIFORM
INSTRUMENT Form 3157  V 1.4  3/09 (rev. 10/10)   Loan No.: 1060345                                    *(Page 1 of 5 pages)*

G. I have made or will make all payments required under a trial period plan.

2.  **Acknowledgements and Preconditions to Modification.**   I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.**

If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 04/01/2015.

A.  The new Maturity Date will be: 03/01/2055.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $321,475.99 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $ 176,698.19  of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance.  I will not pay interest or make monthly payments on the Deferred Principal Balance.  In addition, $ 176,260.99 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 01/01/2015, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount.  Application of the Deferred Principal Reduction Amount will not result in a new payment schedule.  The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 144,777.80 .  Interest at the rate of 2.000%  will begin to accrue on the Interest Bearing Principal Balance as of 03/01/2015  and the first new monthly payment on the Interest Bearing Principal Balance will be due on 04/01/2015.  My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|----------------------------------------------|------------------------------------------|----------------------|-------------------|----------------------------|
| 1-5 | 2.000% | 03/01/2015 | $438.42 | $655.11 | $1,093.53 | 04/01/2015 | 60 |
| 6 | 3.000% | 03/01/2020 | $509.35 | Adjust Annually | Adjust Annually | 04/01/2020 | 12 |
| 7-40 | 3.750% | 03/01/2021 | $565.00 | Adjust Annually | Adjust Annually | 04/01/2021 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4.  **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and require-ments of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;  (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items.".  I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.  Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents. and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender

shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender tha amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal Information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

---

Mortgage Electronic Registration Systems, Inc. - Nominee for Lender

IN WITNESS WHEREOF, the Lender and I have executed this Agreement.

Borrower:

By: _~Christopher J Galloway (signature)~_ Date: 3/19/15
CHRISTOPHER J GALLOWAY

By: _~Beth Galloway (signature)~_ Date: 3/19/15
BETH GALLOWAY

Lender:

Rafael Alvarez
Assistant Vice President
By: _~(signature)~_ Date: 3.20.15
Bayview Loan Servicing, LLC

Asset Manager: Desiree Duran
Phone Number: (877) 223-1573  Monday - Friday 9:00 am to 6:00 pm ET
Fax Number:   (305) 644-8119

---

*[Space Below This Line For Acknowledgement]*

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT  - Single Family  - Fannie Mae / Freddie Mac  UNIFORM
INSTRUMENT Form 3157  V 1.4  3/09 (rev. 10/10)   Loan No.: 1060345                                   [Page 5 of 5 pages]

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 09045 PG 1580
RECORDED 06/15/2009 13:20:13
FILE NUMBER 2009041318
RCPT#: 779697; RECD BY: suel
RECORDING FEES 40.00
MARGINAL NOTATION 10.00

Min #

**WHEN RECORDED MAIL TO:**
*PHELAN HALLINAN & SCHMIEG*
*400 Fellowship Road*
*Suite 100*
*Mt. Laurel, NJ 08054*
*PHS #CHL-5534*

## *ASSIGNMENT OF MORTGAGE*

*FOR VALUE RECEIVED*, **Mortgage Electronic Registration Systems Inc. as a nominee for Security Atlantic Mortgage Co. Inc. its successors and assigns**, the undersigned, as beneficiary or successor thereto, whose address is **P.O. Box 2026 Flint MI 48501**, hereby grants, conveys, assigns and transfers unto BAC HOME LOANS SERVICING, LP, whose address is **c/o of Countrywide Home Loans, Inc., 7105 Corporate Drive, Plano, TX 75024**, its successors and assigns, all beneficial interest under that certain Mortgage dated February 15, 2008. Said Mortgage is recorded in the State of New Jersey, County of **CAMDEN.**

*Mortgage Recorded: March 7, 2008*
*Original Mortgage Company: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SECURITY ATLANTIC MORTGAGE CO. INC. ITS SUCCESSORS AND ASSIGNS*
*Original Mortgagors: CHRISTOPHER J. GALLOWAY AND BETH GALLOWAY*
*Original Loan Amount: $202,284.00*
*Book: 8781*
*Page: 1360*
*Property Address: 7759 CORBETT AVENUE, PENNSAUKEN, 08109-3664*

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignee. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

***TOGETHER*** with the Bond, Note, or other Obligation therein described or referred to, and the money due and to become due thereon, with the interest.

***TO HAVE AND TO HOLD*** the same unto the said Assignee, its successor and assigns, forever subject only to all the provisions contained in the said Mortgage and the Bond, Note or other Obligation. And the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same

as fully as the Assignor might or could do if these presents were not made.

*I AGREE TO THE TERMS OF THIS ASSIGNMENT.*

*Witnessed or Attested by:*

_Judith T. Romano_ *(Seal)*
Judith T Romano,                    Assistant Secretary
and Vice President

## *NOTARY ACKNOWLEDGMENT*

*CAPACITY CLAIMED BY SIGNER:* Assistant Secretary and Vice President

*OF*    **Mortgage Electronic Registration Systems Inc. as a nominee for Security Atlantic Mortgage Co. Inc. its successors and assigns**

*STATE OF    Pennsylvania*
*COUNTY OF Philadelphia*

On,    **4/29/09**    , before me, **Eugene Jaskiewicz,** a Notary Public, personally appeared Judith T Romano, Assistant Secretary and Vice President, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same in her authorized capacity and that by her signature on the instrument, the entity upon behalf of which the person acted executed the instrument.

*WITNESS my hand and official seal.*

_____
*Notary Public*

**COMMONWEALTH OF PENNSYLVANIA**
NOTARIAL SEAL
**EUGENE JASKIEWICZ,** Notary Public
City of Philadelphia, Phila. County
**My Commission Expires** August 13  2011

CAMDEN COUNTY, NJ

 **Camden County**
**Document Summary Sheet**

ASSN MTG-OR BOOK 10131 PG 1365
RECORDED 01/12/2015 10:30:27
FILE NUMBER 2015001739
RCPT # 1525480; RECD BY: eRecord
RECORDING FEES 40.00
MARGINAL NOTATION FEE 10.00

CAMDEN COUNTY CLERK

520 MARKET ST
CAMDEN NJ 08102

Official Use Only

| 1060345A | **Transaction Identification Number** | 2328771 | 1570426 |
|---|---|---|---|

| | | Return Address *(for recorded documents)* |
|---|---|---|
| Submission Date *(mm/dd/yyyy)* | 12/16/2014 | |
| No. of Pages *(excluding Summary Sheet)* | 1 | DEFAULT SERVICES - AVENUE 365 |
| Recording Fee *(excluding transfer tax)* | $40.00 | 401 PLYMOUTH ROAD, SUITE 550 |
| Realty Transfer Tax | $0.00 | PLYMOUTH MEETING, PA 19462 |
| Total Amount | $40.00 | |

| Document Type | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**

CAMDEN COUNTY                                99

**Batch Type**

L2 - LEVEL 2 (WITH IMAGES)

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF  CAMDEN  COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



# Camden County
# Document Summary Sheet

| Type | ASSIGNMENT OF MORTGAGE | | | |
|---|---|---|---|---|
| **Consideration** | | | | |
| **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) | | | |
| **Document Date** | 03/07/2008 | | | |
| **Reference Info** | | | | |

**ASSIGNMENT OF MORTGAGE**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| OR | 08781 | 1360 | 2008018757 | |

| ASSIGNOR | Name | Address |
|---|---|---|
| | BANK OF AMERICA NA SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING | |

| ASSIGNEE AND MORTGAG· | Name | Address |
|---|---|---|
| | SECRETARY OF HOUSING AND URBAN DEVELOPMENT | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

*** DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF  CAMDEN  COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Recording requested by:
BANK OF AMERICA, N.A.
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP

When recorded mail to:
BAYVIEW LOAN SERVICING, LLC
4425 PONCE DE LEON BLVD
5TH FLOOR
CORAL GABLES, FL 33146
Attn: RAMONA CAREAGA

## CORPORATION ASSIGNMENT OF MORTGAGE

For value received, the undersigned, BANK OF AMERICA, N.A., SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING, LP, 1800 TAPO CANYON ROAD, SIMI VALLEY,
CA 93063, hereby grants, assigns and transfers to:
SECRETARY OF HOUSING AND URBAN DEVELOPMENT
451 7TH STREET S.W., WASHINGTON, D.C. 20410

All its interest under that certain Mortgage dated 2/15/08, executed by:
CHRISTOPHER J GALLOWAY and BETH GALLOWAY, Mortgagor as per MORTGAGE recorded
as Instrument No. 2008018757 on 3/07/08 in Book 08781 Page 1360 of official
records in the County Recorder's Office of CAMDEN County, NEW JERSEY.
   Tax Parcel = 02802.0000 00016.0000.  PENNSAUKEN TOWNSHIP
Original Mortgage $202,284.00
7759 CORBETT AVENUE, PENNSAUKEN, NJ 08109

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Mortgage.

Dated: __AUG 27 2014__       BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME
                             LOANS SERVICING, LP

                        By_____
                          LISA NIX, ASSISTANT VICE PRESIDENT

State of California
County of Ventura
On __AUG 27 2014__ before me, __TRISHA JACKSON__, Notary Public, personally appeared
LISA NIX, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
            TRISHA JACKSON        Notary Public

Prepared by: MARIVEL CASTRO
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063
Phone#: (213) 345-1473

TRISHA JACKSON
COMM.# 2068914
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 18, 2018

CAMDEN COUNTY, NJ

 **Camden County**
**Document Summary Sheet**

CAMDEN COUNTY CLERK

520 MARKET ST

CAMDEN NJ 08102

ASSN MTG-OR BOOK 10147 PG 1261
RECORDED 01/29/2015 13:44:30
FILE NUMBER 2015009287
RCPT # 1534589; RECD BY: eRecord
RECORDING FEES 40.00
MARGINAL NOTATION FEE 10.00

**Official Use Only**

| 10603458 | **Transaction Identification Number** | 2350040 | 1594401 |
|---|---|---|---|

| | |
|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 01/21/2015 |
| **No. of Pages** *(excluding Summary Sheet)* | 1 |
| **Recording Fee** *(excluding transfer tax)* | $40.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $40.00 |

**Return Address**     *(for recorded documents)*

DEFAULT SERVICES - AVENUE 365

401 PLYMOUTH ROAD, SUITE 550

PLYMOUTH MEETING, PA 19462

| **Document Type** | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**
    CAMDEN COUNTY                                  99

**Batch Type**
    L2 - LEVEL 2 (WITH IMAGES)

**Bar Code(s)**

**Additional Information (Official Use Only)**

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



# Camden County
# Document Summary Sheet

| Type | ASSIGNMENT OF MORTGAGE |
|---|---|
| Consideration | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) |
| Document Date | 09/05/2014 |
| Reference Info | |

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| OR | 08781 | 1360 | 2008018757 | |

**ASSIGNMENT OF MORTGAGE**

| ASSIGNOR | Name | Address |
|---|---|---|
| | THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY BAYVIEW LOAN SERVIC | |

| ASSIGNEE AND MORTGAG· | Name | Address |
|---|---|---|
| | BAYVIEW LOAN SERVICING LLC | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

***DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Recording requested by:
SECRETARY OF HOUSING AND
URBAN DEVELOPMENT BY BAYVIEW
ACQUISITIONS, LLC, ITS
ATTORNEY IN FACT

When recorded mail to:
BAYVIEW LOAN SERVICING, LLC
4425 PONCE DE LEON BLVD
5TH FLOOR
CORAL GABLES, FL 33146
Attn: RAMONA CAREAGA

## CORPORATION ASSIGNMENT OF MORTGAGE

For value received, the undersigned, SECRETARY OF HOUSING AND URBAN
DEVELOPMENT BY BAYVIEW ACQUISITIONS, LLC, ITS ATTORNEY IN FACT, 451 7TH
STREET S.W., WASHINGTON, D.C. 204103, hereby grants, assigns and transfers
to:
  BAYVIEW LOAN SERVICING, LLC
  4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL 33146

All its interest under that certain Mortgage dated 2/15/08, executed by:
CHRISTOPHER J GALLOWAY and BETH GALLOWAY, Mortgagor as per MORTGAGE recorded
as Instrument No. 2008018757 on 3/07/08 in Book 08781 Page 1360 of official
records in the County Recorder's Office of CAMDEN County, NEW JERSEY.
  Tax Parcel = 02802.0000 00016.0000,  PENNSAUKEN TOWNSHIP
Original Mortgage $202,284.00
7759 CORBETT AVENUE, PENNSAUKEN, NJ 08109

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Mortgage.

Dated: 8/5/14          SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY BAYVIEW
                       ACQUISITIONS, LLC, ITS ATTORNEY IN FACT*


                 By _____
                       LAURA M. HARTMANN, VICE PRESIDENT
State of Florida
County of Miami Dade
On 8/5/14 before me, Maria Isabel Puerto _____, Notary Public,
personally appeared LAURA M. HARTMANN, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the
same in his/her their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
Florida _____ that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____

Prepared by: MARIVEL CASTRO
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063
Phone#: (213) 345-1473

                              Notary Public State of Florida
                              Maria Isabel Puerto
                              My Commission EE093993
                              Expires 07/30/2015

*Power of Attorney recorded in Atlantic County, New Jersey as Instrument #2014069199, Volume 13839

## Camden County
## Document Summary Sheet

CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 10933 PG 1588
RECORDED 07/30/2018 09:54:12
FILE NUMBER 2018052908
RCPT # 2059466; RECD BY: eRecord
RECORDING FEES 42.00
MARGINAL NOTATION FEE 10.00

CAMDEN COUNTY CLERK

520 MARKET ST

CAMDEN NJ 08102

**Official Use Only**

| Transaction Identification Number | | |
|---|---|---|
| | 3510406 | 2963681 |

| | | | |
|---|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 07/16/2018 | **Return Address** *(for recorded documents)* | |
| **No. of Pages** *(excluding Summary Sheet)* | 1 | FRIEDMAN VARTOLO LLP | |
| **Recording Fee** *(excluding transfer tax)* *(Convenience Charge of $2.00 included)* | $42.00 | 85 BROAD STREET, SUITE 501 NEW YORK, NY 10004 | |
| **Realty Transfer Tax** | $0.00 | | |
| **Total Amount** | $42.00 | | |

| **Document Type** | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**

PENNSAUKEN                    27

**Batch Type**      L2 - LEVEL 2 (WITH IMAGES)

**Bar Code(s)**

**Additional Information (Official Use Only)**

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**Camden County
Document Summary Sheet**

| | Type | ASSIGNMENT OF MORTGAGE | | | | |
|---|---|---|---|---|---|---|
| | Consideration | | | | | |
| | Submitted By | FRIEDMAN VARTOLO LLP (CSC/INGEO SYSTEMS INC) | | | | |
| | Document Date | 06/21/2018 | | | | |
| | Reference Info | | | | | |
| | Book ID | Book | Beginning Page | Instrument No. | | Recorded/File Date |
| | OR | 8941 | 1419 | 2008092030 | | |

| ASSIGNMENT OF MORTGAGE | ASSIGNOR | Name | | Address | |
|---|---|---|---|---|---|
| | | BAYVIEW LOAN SERVICING LLC | | | |
| | | CHRISTOPHER J GALLOWAY | | | |
| | | BETH GALLOWAY | | | |

| | ASSIGNEE AND MORTGAG | Name | | Address | |
|---|---|---|---|---|---|
| | | BAYVIEW DISPOSITIONS IVA LLC | | | |

| Parcel Info | | | | | | |
|---|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | | Municipality |
| | | | | | | |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**Recording Requested By:**

**When Recorded Mail To:**

_____
_____
_____
_____
_____

## CORPORATE ASSIGNMENT OF MORTGAGE

NJ/CAMDEN

Assignment Prepared on: January 10, 2018

**Assignor: BAYVIEW LOAN SERVICING, LLC**, at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146

**Assignee : BAYVIEW DISPOSITIONS IVA, LLC**, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 10/14/2008, in the amount of $14,709.28, executed by CHRISTOPHER J. GALLOWAY AND BETH GALLOWAY to SECRETARY OF HOUSING AND URBAN DEVELOPMENT. Recorded: 12/3/2008, Instrument #: 2008092030, Book: 8941, Page: 1419 in CAMDEN County, State of New Jersey.

Property Address: 7759 CORBETT AVENUE, PENNSAUKEN, NJ, 08109

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW LOAN SERVICING, LLC

On: _____ JAN 1 7 2018

Signature: _____
Name:     ESLOAN SOTOLONGO
Title:       ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On _JAN 1 7 2018_ before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

_____
Rogelio A. Portal
Notary Expires: 8/25/2020 / #: FF 993630

ROGELIO A. PORTAL
MY COMMISSION # FF 993630
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

NJ/CAMDEN



## Camden County
## Document Summary Sheet

CAMDEN COUNTY CLERK COFFICE
ASSN MTG-OR BOOK 10933 PG 1591
RECORDED 07/30/2018 09:54:12
FILE NUMBER 2018052909
RCPT # 2059466; RECD BY: eRecord
RECORDING FEES 42.00
MARGINAL NOTATION FEE 10.00

CAMDEN COUNTY CLERK

520 MARKET ST

CAMDEN NJ 08102

**Official Use Only**

| Transaction Identification Number | | |
|---|---|---|
| | 3510406 | 2963682 |

| | | |
|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 07/16/2018 | **Return Address**   *(for recorded documents)* |
| **No. of Pages** *(excluding Summary Sheet)* | 1 | FRIEDMAN VARTOLO LLP |
| **Recording Fee** *(excluding transfer tax)* | $42.00 | 85 BROAD STREET, SUITE 501 |
| *(Convenience Charge of $2.00 included)* | | NEW YORK, NY 10004 |
| **Realty Transfer Tax** | $0.00 | |
| **Total Amount** | $42.00 | |

| **Document Type** | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**

PENNSAUKEN                                            27

| **Batch Type** | L2 - LEVEL 2 (WITH IMAGES) |
|---|---|

### Bar Code(s)

### Additional Information (Official Use Only)

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**Camden County**
**Document Summary Sheet**

| ASSIGNMENT OF MORTGAGE | Type | ASSIGNMENT OF MORTGAGE | | | | |
|---|---|---|---|---|---|---|
| | Consideration | | | | | |
| | Submitted By | FRIEDMAN VARTOLO LLP (CSC/INGEO SYSTEMS INC) | | | | |
| | Document Date | 07/16/2018 | | | | |
| | Reference Info | | | | | |
| | **Book ID** | **Book** | **Beginning Page** | | **Instrument No.** | **Recorded/File Date** |
| | OR | 8941 | 1419 | | 2008092030 | |
| | **ASSIGNOR** | **Name** | | | **Address** | |
| | | BAYVIEW DISPOSITIONS IVA LLC | | | | |
| | | CHRISTOPHER J GALLOWAY | | | | |
| | | BETH GALLOWAY | | | | |
| | **ASSIGNEE AND MORTGAG** | **Name** | | | **Address** | |
| | | WILMINGTON SAVINGS FUND SOCIETY FSB ACTING NOT IN ITS INDIVIDUAL CAPACITY BUT TRUSTEE OF SOUTHSIDE NSP TRUST 2017-1 | | | | |
| | **Parcel Info** | | | | | |
| | **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Recording Requested By:

When Recorded Mail To:

_____
_____
_____
_____

## CORPORATE ASSIGNMENT OF MORTGAGE

NJ/CAMDEN

Assignment Prepared on: January 10, 2018

**Assignor: BAYVIEW DISPOSITIONS IVA, LLC**, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

**Assignee : WILMINGTON SAVINGS FUND SOCIETY, FSB, ACTING NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF SOUTHSIDE NSP TRUST 2017-1**, at 12396 WORLD TRADE DR., SUITE 114, SAN DIEGO, CA, 92128

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 10/14/2008, in the amount of $14,709.28, executed by CHRISTOPHER J. GALLOWAY AND BETH GALLOWAY to SECRETARY OF HOUSING AND URBAN DEVELOPMENT.   Recorded: 12/3/2008, Instrument #: 2008092030, Book: 8941, Page: 1419 in CAMDEN County, State of New Jersey.

Property Address: 7759 CORBETT AVENUE, PENNSAUKEN, NJ, 08109

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW DISPOSITIONS IVA, LLC

On: _____ JAN 1 7 2018

Signature: _____
Name:    ESLOAN SOTOLONGO
Title:    ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On _____ JAN 1 7 2018 before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW DISPOSITIONS IVA, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

Rogelio A. Portal
Notary Expires: 8/25/2020 / #: FF 993630

ROGELIO A. PORTAL
MY COMMISSION # FF 993630
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

**NJ/CAMDEN**